[No. B108435. Second Dist., Div. One. Dec. 17, 1997.]

WILLIAM UNLAND, Plaintiff and Appellant, v.
SHERMAN BLOCK, as Sheriff, etc., Defendant and Respondent.

COUNSEL

Diane Marchant for Plaintiff and Appellant.

De Witt W. Clinton, County Counsel, and Sheilah Curtis, Principal Deputy County Counsel, for Defendant and Respondent.

OPINION

ORTEGA, J.—The Penal Code permits qualifying retired peace officers to obtain from their former law enforcement agencies retirement identification certificates with a "CCW"[1] endorsement authorizing them to carry concealed and loaded firearms. (§ 12027, subd. (a).) But the law prohibits law enforcement agencies from providing CCW endorsements to peace officers who retired "because of a psychological disability[.]" (§ 12027.1, subd. (e).)

In this case, the parties disagreed about the reasons for the officer's disability retirement. The officer, whose psychiatrist had ordered him off work and prescribed medication and psychotherapy for depression and anxiety, filed for a disability retirement for multiple reasons including orthopedic injuries and "anxiety conditions sustained through the course of employment." The county retirement board granted the disability retirement

---

[1]According to Penal Code section 12027, subdivision (a)(1)(E), " 'CCW' means 'carry concealed weapons.' " All further undesignated statutory references are to the Penal Code.

without stating why. Faced with the officer's request for a CCW endorsement, the law enforcement agency examined the medical records in the retirement board's possession, concluded the officer had retired in part "because of a psychological disability" (§ 12027.1, subd. (e)), and denied him a CCW endorsement without a hearing.

Before the 1988 amendments (Stats. 1988, ch. 1212) to the statutory scheme governing CCW endorsements, law enforcement agencies could deny CCW endorsements for good cause, including psychological disability, without "a full adversarial evidentiary hearing before a neutral third party[.]" (*Knapp* v. *City of Gardena* (1990) 221 Cal.App.3d 344, 347 [270 Cal.Rptr. 524].) The 1988 amendments changed the law, in relevant part, by adding section 12027.1, which requires hearings, with notice, before an impartial three-member panel on the good cause to revoke or deny a CCW endorsement, unless the officer retired because of a psychological disability. We must decide whether the 1988 legislation divested law enforcement agencies of their power to decide, without a hearing, whether the officer had retired because of a psychological disability and, thus, was ineligible for a CCW endorsement. We conclude the 1988 legislation left that portion of the former statutory scheme intact. Accordingly, we affirm the order denying the officer's petition for writ of mandate. (Code Civ. Proc., § 1085.)[2]

## FACTUAL AND PROCEDURAL BACKGROUND

William Unland became a deputy sheriff with the Los Angeles County Sheriff's Department on December 27, 1974. He was promoted to sergeant in January 1984. During his tenure, he received numerous commendations for bravery and a medal of valor.

Unland, unfortunately, also sustained numerous physical injuries in the line of duty. The following assertions are taken from Unland's opening brief. He injured his neck in a 1982 automobile accident, and reinjured his neck three days later when a suspect hit him with a chair. In 1986, while Unland was wrestling on the ground with a suspect, another deputy came to Unland's aid and accidentally hit him repeatedly in the head with a police baton, reinjuring Unland's neck. In 1987, Unland hurt his lower back while jumping a fence to chase a suspect. In 1988, he reinjured his back while moving supplies. In February 1989, Unland again hurt his neck after being

---

[2]"[A writ of mandamus or mandate] may be issued by any court, except a municipal or justice court, to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station; or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such inferior tribunal, corporation, board or person." (Code Civ. Proc., § 1085.)

knocked unconscious by a rock. In September 1989, he reinjured his neck after being hit in the face with a telephone. In 1993, he developed bursitis in the hip from wearing a new department-issued holster. Unland also injured his sternum from continuously wearing a department-issued protective vest with a steel trauma plate.

In January 1994, Unland received a light duty assignment. The desk work, however, "aggravated his neck as much as riding in a radio car." Unland stopped working in March 1994, complaining of constant neck, shoulder, sternum, and chest pain. Unland's general practitioner referred him to a psychiatrist, who placed him off work on March 24, 1994, and prescribed medication and psychotherapy for depression.

Unland filed workers' compensation claims "for neck, spine, cardiovascular, and psyche conditions from 1974 through December 6, 1993; a chest condition from 1974 through November 21, 1993; a right hip condition from 1974 through November 14, 1993; and hearing loss from 1974 through November 1993."

On December 7, 1994, Unland applied to the Los Angeles County Employees Retirement Association (LACERA)[3] for a service-connected disability retirement pension. According to LACERA's internal "Disability Retirement Evaluation Report" (LACERA report) Unland claimed "he is permanently incapacitated for the performance of his duties as a result of neck, back, cardiovascular, and anxiety conditions sustained throughout the course of employment." The report indicated Unland had been told "he would be interviewed for his orthopedic conditions at this time and reinterviewed for his other conditions, if necessary."

In support of his disability retirement application, Unland submitted the reports of Dr. Latteri, an orthopedist, and Dr. Friedman, a psychiatrist. According to the LACERA report, Dr. Latteri had diagnosed a "[c]ervical disk protrusion, C5-C-6 with intermittent radiculopathy into the left upper extremity[,] [c]hronic costochondritis[,] [d]epression and anxiety[,] [p]resently under psychiatric care[, and] [c]hronic headaches." The LACERA report further stated Dr. Friedman had diagnosed "[m]ajor depression with features of post-traumatic stress disorder . . . [and] [p]sychological factors affecting physical condition."

The LACERA report described Unland's "current symptoms/complaints" (capitalization omitted) as follows: "Mr. Unland stated he has constant neck pain. The radiation into the left shoulder and occasional twitching and pain

---

[3]LACERA is not a party to this litigation.

in the left arm have decreased. He stated he has constant chest and sternum pain, more intense when twisting and during exertion. He stated he has constant right hip pain radiating to the right knee, aggravated especially by prolon[g]ed walking. He stated he has occasional dizziness, headaches, and more seldomly, a fast heart beat. He said he has intermittent anxiety and depression. [¶] Mr. Unland stated he has psychotherapy once or twice a week. He takes prescribed and over-the-counter pain medication as well as anti-anxiety, anti-depressant, and ulcer medi[c]ation. . . ."

At LACERA's request, Unland was evaluated by Dr. Clark, an orthopedist. According to the LACERA report, Dr. Clark had diagnosed a "[d]egenerative disc disease, cervical spine[,]" a "[d]isc derangement, cervical spine, by MRI study[,]" "costochondritis[,]" and "[i]ntermittent bursitis right lateral hip." Dr. Clark's report summarized Unland's medical records from 13 different physicians or medical centers, and noted that several of the records had mentioned depression and anxiety. Dr. Clark's report also indicated Unland was presently taking Prozac, an antidepressant.

The LACERA staff recommended that LACERA grant Unland a service disability retirement, stating: "The panel doctor specializing in orthopedic surgery finds Mr. Unland is permanently incapacitated for his duties from a musculoskeletal point of view and opines this incapacity is work-related. Therefore, staff recommends the Board find Mr. Unland permanently incapacitated for his duties as a Sergeant for service-connected causes." On May 5, 1995, LACERA granted Unland a service-connected disability retirement without issuing any specific findings as to why it was doing so.

On September 24, 1994, the sheriff's department notified Unland he would be given an honorable retirement identification certificate, but that his certificate would not contain a CCW endorsement. The notification stated in part: "The Department's decision to deny you concealed weapon privileges was predicated upon information obtained from your medical records held at [LACERA]. This documentation indicates that your retirement was based, at least in part, upon a psychological condition which precludes us from granting you a concealed weapon endorsement." The letter went on to quote section 12027.1, subdivision (e): " 'No peace officer who is retired after January 1, 1989, because of a psychological disability shall be issued an endorsement to carry a concealed and loaded firearm pursuant to this section.' "

Unland asked the department for a hearing, presumably under section 12027.1, subdivisions (b)(1) and (d), on the denial of his CCW endorsement. Those subdivisions provide: "(b)(1) An identification certificate authorizing

the officer to carry a concealed and loaded firearm or an endorsement may be revoked or denied by the issuing agency only upon a showing of good cause. Good cause shall be determined at a hearing, as specified in subdivision (d)." "(d) Any hearing conducted under this section shall be held before a three-member hearing board. One member of the board shall be selected by the agency and one member shall be selected by the retired peace officer or his or her employee organization. The third member shall be selected jointly by the agency and the retired peace officer or his or her employee organization. [¶] Any decision by the board shall be binding on the agency and the retired peace officer."

In his letter seeking a hearing, Unland denied having retired because of psychological disability. He stated in part: "It is my understanding that the basis of my service related disability retirement was 'repeated cervical spine injury[,'] and not a 'psychological condition' as indicated in your aforementioned letter of notification. [¶] . . . I also believe that I can prove that the issuance of a 'Concealed Weapons Permit' is necessary due to the nature of my past assignments, and the very real threat that my family and self are subjected to by Organized Crime associates now that I am retired and unarmed. . . ."

The department denied Unland's request for a hearing, reiterating it had reviewed Unland's medical records in LACERA's possession, and determined Unland's "retirement was based, . . . in part, upon a psychological condition . . . ."

Unland filed a petition for peremptory writ of mandate (Code Civ. Proc., § 1085), seeking to compel the department to provide a CCW endorsement on his identification certificate. The superior court denied the petition, stating in its minute order: "It appears from the evidence (exhibit A to petition) that petitioner was granted retirement in part due to 'Depression and anxiety[,'] 'Major depression[,'] 'Psychological Factors[.'] Also, the evidence shows that petitioner is 'under psychiatric care[.'] Further, it appears that petitioner also filed a worker's compensation case in part based on 'psyche conditions[.']"

Unland appealed from the order denying the petition for writ of mandate.

CONTENTIONS ON APPEAL

Unland contends: (I) "Under the County Employees Retirement Law of 1937, LACERA Has the Exclusive Jurisdiction to Determine Whether a Member is Incapacitated for the Performance of Duty." (II) "By Inaction, the

Sheriff's Department Waived Any Claim That Unland Retired Because of a Psychological Disability." (Underscoring omitted.)

## DISCUSSION

### I

■ Section 12027.1, subdivision (e) provides that if a peace officer retires after January 1, 1989, because of a psychological disability, the law enforcement agency may not grant the officer a CCW endorsement. It does not, however, state that only retirement boards such as LACERA may decide whether the peace officer retired because of a psychological disability. In fact, subdivision (e) says nothing regarding the law enforcement agency's power to decide that preliminary question.

Section 12027.1 was enacted as part of the 1988 amendments to rework the statutory scheme governing CCW endorsements.[4] The changes were, in part, a reaction to the Court of Appeal's opinion in *San Jose Police Officers Assn.* v. *City of San Jose* (1988) 199 Cal.App.3d 1471 [245 Cal.Rptr. 728].

---

[4]As originally enacted (Stats. 1988, ch. 1212, § 2, p. 4046.), section 12027.1 stated: "(a) As specified in subdivision (a) of Section 12027, any peace officer employed by a local agency and listed in Section 830.1 . . . , retired after January 1, 1981, shall have an endorsement on the identification certificate stating that the issuing agency approves the officer's carrying of a concealed firearm. The endorsement may be removed by the issuing agency upon a hearing conducted in accordance with subdivision (b) to show good cause. A retired peace officer shall have 15 days to respond to a notice of that hearing, or failing to respond to the notice, forfeits his or her rights to that hearing. A retired peace officer may have his or her privilege to carry a concealed firearm revoked by violating any departmental rules, state, or federal laws that if violated by an officer on active duty would result in that officer's arrest, suspension, or removal from the agency. A retired officer when notified of the revocation of his or her privilege to carry a concealed firearm shall immediately surrender his or her identification certificate and endorsement to the issuing agency. The issuing agency shall reissue a new identification without such endorsement. No peace officer listed in this section retired after January 1, 1989, shall be issued an endorsement to carry a concealed firearm if that peace officer is retired because of a psychological disability. [¶] (b) Any hearing conducted under this section shall be held before a three-member hearing board. One member of the board shall be selected by the local agency and one member shall be selected by the retired peace officer or his or her employee organization. The third member shall be selected jointly by the local agency and the retired peace officer or his or her employee organization."

The statute was amended in 1991 and again in 1993, dividing the statute into five, rather than the original two, main subdivisions. As enacted in 1988, section 12027.1 subjected revocations of CCW endorsements to good cause hearings. The 1991 amendment subjected both denials and revocations to the hearing requirement. (§ 12027.1, subd. (a)(1)(B) ["An identification certificate authorizing the officer to carry a concealed and loaded firearm or an endorsement on the certificate may be revoked or denied by the issuing agency only upon a showing of good cause. Good cause shall be determined at a hearing, as specified in subdivision (d)."].)

In *San Jose,* the police chief's stated policy was to review each CCW endorsement application on a case-by-case basis, review all available medical and psychiatric evidence, and offer a hearing before himself or his designated representative on any denial. In the particular case leading to the *San Jose* litigation, the chief conducted a hearing at which the officer presented a physician's letter stating there were no emotional or psychological problems to prohibit him from carrying a weapon. The bulk of the hearing, however, was directed to "what additional procedural safeguards, if any, should be provided." (*San Jose Police Officers Assn.* v. *City of San Jose, supra,* 199 Cal.App.3d at p. 1476.) The chief denied the CCW endorsement, citing medical and psychiatric records which " 'revealed that . . . [the officer] had difficulty in dealing with stressful situations and was a high risk for suicide.' " (*Ibid.*) The officer unsuccessfully challenged the chief's decision by filing a writ of mandate petition. On appeal, the officer contended only the city council, and not the chief, had the power to decide whether to issue a CCW endorsement, and that his state due process right to a hearing had been violated. The appellate court found the police chief possessed the authority to deny the CCW endorsement for good cause, and no additional procedural protections were required under the state due process clause. (*Id.* at pp. 1476-1486.)

Soon after the *San Jose* decision was issued, the Legislature enacted section 12027.1. As pertinent to this appeal, the new statute changed the law regarding CCW endorsements in two ways. It simultaneously created an automatic denial rule for officers who retired because of psychological disabilities and, at the same time, provided a new noticed hearing procedure for all other denial or revocation cases. The Legislature thereby created a two-pronged procedure for denying CCW endorsements. It gave greater procedural protection to retired peace officers in general, except those who retired because of psychological disabilities.

Unland does not dispute the Attorney General's conclusion that, "A peace officer who has retired after January 1, 1989, because of a psychological disability is not entitled to a hearing with respect to his employing agency's denial of his right to carry a concealed and loaded firearm." (78 Ops.Cal.Atty.Gen. 128, 129 (1995).)[5] Because Unland retired after January 1, 1989, he had no statutory right to a noticed hearing under section

---

[5]Had the Legislature enacted a singular good-cause hearing requirement without the automatic denial provision for psychological disability retirement cases, Unland would have been entitled to a hearing under section 12027.1, subdivisions (b)(1) and (d). This case would have been similar to *Knapp* v. *City of Gardena, supra,* 221 Cal.App.3d 344, where the officer retired before January 1, 1989, when the automatic denial provision for psychological disability retirement cases took effect, but his application for a CCW endorsement was not denied until after section 12027.1's enactment. Because the automatic denial provision does

12027.1 if he retired because of a psychological disability.[6] Unland concedes that is the rule, but contends it only applies when LACERA issues a finding of psychological disability. Without LACERA's finding, Unland asserts, the department must either issue the CCW endorsement or prove good cause at a noticed hearing.

In effect, Unland's interpretation would rewrite section 12027.1, subdivision (e) to read: "No peace officer who [the retirement board states] is retired . . . because of a psychological disability shall be issued an endorsement to carry a concealed and loaded firearm pursuant to this section." Such interpretation would frustrate section 12027.1's two-pronged approach by limiting subdivision (e)'s application to cases where the retirement board happened to make the necessary psychological disability finding. Nothing in the statute indicates that was the Legislature's intent. Section 12027.1 did not on its face remove the law enforcement agency's preexisting authority to examine medical and psychiatric records for evidence of a psychological disability in denying a CCW endorsement.

Before section 12027.1's enactment, law enforcement agencies were free to review the officer's medical and psychological records for evidence of a psychological disability in evaluating a CCW endorsement application. Evidence of such disability constituted good cause to deny the CCW endorsement, from which there was no statutory or due process right to a hearing. (*San Jose Police Officers Assn.* v. *City of San Jose, supra,* 199 Cal.App.3d at pp. 1478-1486.) We presume the Legislature was aware of the existing state of the law when it enacted section 12027.1. ("The Legislature is presumed to have been aware of the *San Jose* decision. (*Estate of McDill* (1975) 14 Cal.3d

---

not apply to officers who retired before January 1, 1989, the appellate court in *Knapp* affirmed the issuance of a writ of mandate compelling the police chief either to grant the CCW endorsement or provide a hearing in accordance with section 12027.1. (221 Cal.App.3d at pp. 346, 349.)

[6]Our colleagues in Division Five commented in *Knapp* on the incongruous results the timing of the statute can cause: "Appellants raise a collateral point which involves the timing of the statute. The last sentence of section 12027.1, subdivision (a) [now section 12027.1, subdivision (e)] states, 'No peace officer listed in this section retired after January 1, 1989, shall be issued an endorsement to carry a concealed firearm if that peace officer is retired because of a psychological disability.' This does not apply to respondent, who retired for psychological disability before January 1, 1989. Appellants contend it is 'bizarre' for respondent to demand a hearing under the same statute which automatically denies a CCW endorsement to an officer retired for psychological disability. This provision, however, was expressly made prospective by the Legislature, who may have intended that an officer who applies for retirement based on psychological disability should be forewarned that he will forfeit the privilege granted by section 12027, subdivision (a). We repeat that the issue on this appeal is not whether respondent should have a CCW endorsement but only the procedure by which good cause for its denial is determined." (*Knapp* v. *City of Gardena, supra,* 221 Cal.App.3d at p. 349, fn. 2.)

831, 839 . . . .) The Legislature's action indicates its intent to change the law and to provide greater procedural protection to retired peace officers. (*Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 659-660 . . . .)" (*Knapp* v. *City of Gardena, supra,* 221 Cal.App.3d at p. 348.).) Armed with that presumed knowledge, the Legislature created a summary denial procedure for officers who retired because of a psychological disability, and a full adversarial hearing procedure in all other cases of denial or revocation. Had the Legislature intended to subject psychological disability denial cases to the same noticed hearing requirement, it would have done so.

Unland's dissatisfaction with the department's summary denial of his application also stems in part from the lack of any objective standard of proof the department must meet to establish the existence of a psychological disability. As Unland puts it, "the existence of a 'psychological condition' does not equate to being 'retired because of a psychological disability.' There is a big difference between a 'condition' and a 'disability.' "

*San Jose Police Officers Assn.* v. *City of San Jose, supra,* 199 Cal.App.3d 1471 was filed on April 5, 1988, and the Governor approved section 12027.1 on September 22, 1988. The Legislature, however, did not choose to define "psychological disability" in section 12027.1, despite knowing the police chief in *San Jose* had reviewed the officer's medical and psychiatric records and independently concluded he had retired because of a psychological disability. If the Legislature had wished to define "psychological disability" for cases after *San Jose*, it would have done so in the 1988 legislation.

Unland's reliance upon the County Employees Retirement Law of 1937 (Gov. Code, § 31450 et seq.) is misplaced. The fact that LACERA possessed the exclusive jurisdiction to determine his permanent incapacity for retirement purposes (Gov. Code, § 31725) does not mean LACERA also possessed the exclusive jurisdiction to determine, for CCW endorsement purposes, whether he had retired because of a psychological disability. (See *San Jose Police Officers Assn.* v. *City of San Jose, supra,* 199 Cal.App.3d at pp. 1476-1478.) CCW endorsements are to be approved by "the issuing agency" (§ 12027.1, subd. (a)(1)(A)(i)), which is "[t]he agency from which a peace officer is honorably retired[.]" (§ 12027, subd. (a)(2).) The "issuing agency" in this case is the Los Angeles County Sheriff's Department and not LACERA, which has no authority to issue CCW endorsements.

II

Finally, we reject Unland's contention of waiver. He asserts the department, by failing to submit a timely application for his retirement because of

a psychological disability (see Gov. Code, §§ 31721, 31722), waived its claim that he had retired for that reason. This contention assumes the department had no jurisdiction to determine whether, for purposes of section 12027.1, Unland had retired because of a psychological disability. In light of our determination that the department was so authorized, the waiver claim is moot.

## DISPOSITION

We affirm the order denying the petition for writ of mandate. Respondent is awarded costs on appeal.

Spencer, P. J., and Dunn, J.,* concurred.

---

*Judge of the Los Angeles Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.